## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| American Financial Resources, Inc., *Plaintiff* v. Universal Mortgage and Finance, Inc. *Defendant(s)* | Civil Act. No.: 3:23-cv-766 **COMPLAINT** **AND DEMAND FOR JURY TRIAL** |

American Financial Resources, Inc. ("AFR" and/or "Plaintiff"), by and through its undersigned counsel, as and for its Complaint against Universal Mortgage and Finance, Inc. ("Universal" and/or "Defendant") states and alleges as follows:

### PARTIES

1. AFR is a New Jersey corporation engaged in the business of originating, brokering, and purchasing and transfer of certain residential mortgage loans, including servicing rights, with a principal place of business at 8 Campus Drive, Suite 401, Parsippany, New Jersey 07054.  For purposes of diversity jurisdiction, AFR is a citizen of New Jersey.

2. Upon information and belief, Defendant Universal is a Maryland corporation engaged in the business of originating, and the subsequent sale and transfer of certain residential mortgage loans, including servicing rights, with a principal place of business at 3158 Braverton Street, #204, Edgewater, MD 21037 and/or 2450 Riva Road, Suite 202, Annapolis, MD 21401 and having a registered agent for the service of process at CSC-

    Lawyers Incorporating Service Company, 7 St. Paul Street, Suite 820, Baltimore, MD 21202.  For purposes of diversity jurisdiction, Universal is a citizen of Maryland.

3. This Court has subject matter jurisdiction over AFR's claims under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the matter in controversy is between citizens of different states, Plaintiff being a citizen of New Jersey and Defendant being citizen of Maryland.

4. This Court has personal jurisdiction over Defendant because: (a) Universal possesses a Florida Mortgage Lender License #MLD518, originally issued August 15, 2011 and renewed through at least the present; is registered to do business in Florida and actually does do business in Florida; and has a branch office located in Florida at 151 Prince Albert Ave., St. Johns, FL 32259; and regularly and customarily does business in the state of Florida.  Moreover, the loan at issue in this matter revolves around a contractual demand to repurchase a loan in connection with property located at 3755 NW 211 St., Miami Gardens, FL 33055.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because this judicial district is where Defendant resides by virtue of its branch office located there.

## NATURE OF SUIT AND FACTS COMMON TO ALL COUNTS

6. On or about May 3, 2016, AFR entered into a certain Correspondent Origination and Sales Agreement with Universal governing the origination, sale, and transfer of certain residential mortgage loans including the transfer of servicing rights.  In addition, AFR and Universal, at the same time, entered into that certain Delegated Underwriting Addendum to further define the parties' respective rights and obligations.  Together,

these documents are referred to as the "Contract". A true and correct copy of the Contract is attached hereto as **Exhibit A**.

7. Specifically, the Contract provided for Universal offering for sale, and AFR purchasing, certain residential mortgage loans in accordance with the terms and conditions of the Contract.

8. The Contract is governed by New Jersey law, although there is no provision for any particular consented jurisdiction or venue.

9. Since upon and after entering into the Contract, Universal has offered certain mortgage loans for sale to AFR and AFR has purchased certain mortgage loans from Universal.

10. Pursuant to the Contract, upon purchase and sale of a residential mortgage loan from Universal to AFR, Universal represents and warrants to AFR that, with respect to delegated underwritten loans, that underwriting performed by Universal insures that "all guidelines for the selected loan program have been met concerning those specific to FNMA, FHLMC, FHA, VA, USDA, AFR and all federal and/or state laws and regulations associated with the origination process."

11. Pursuant to the Contract, Universal must deliver to AFR the related loan file and credit file, as well as all "trailing documents" (documentation that occurs and/or is created after the sale, such as, but not limited to, the mortgage after it has been returned from the applicable recording office and been recorded and title policies) as well as all supporting documentation if requested, regarding underwriting and other incidences of the related mortgage loan.

12. Pursuant to the Contract, there is no time frame limitation for AFR to require documents required to be delivered in connection with a loan to be delivered to AFR.

13. Pursuant to the Contract, upon discovery of a breach of any of the representations, warranties, covenants, or agreements set forth therein by Universal, AFR may give notice of such breach to Universal and Universal thereafter has sixty days to cure such breach. If the sixty days expire without such cure, or, alternatively, in the sole but reasonable discretion of AFR, the breach is incapable of cure, Universal must promptly repurchase the affected residential mortgage loan at the defined repurchase price.

14. The Contract also requires that upon the occurrence of certain events as states, Universal is required to immediately repurchase the related mortgage loan at the defined Repurchase Price and those events include by way of example and not limitation, "[Universal] fails to provide all of the documentation required to be delivered to AFR under this Agreement" and if "AFR repurchases any mortgage loan previously conveyed, transferred, or assigned by AFR to any third party due to a loan documentation defect which existed prior to, or arose as a result of any action, inaction or occurrence on or before the Purchase Date regardless of when the defect was discovered."

15. The Contract also provides for certain events that, if they occur, trigger certain obligations, including but not limited to, repurchase obligations as well as indemnity against losses and damages and including attorney's fees.

16. Among the repurchase triggering events provided for in the Contract is Universal failing to provide all of the documentation required to be delivered to AFR and/or breaches a representation and warranty, such as, for example and not by way of limitation, that the relevant mortgage loan was underwritten pursuant to appropriate guidelines and/or fails to satisfy all other requirements which Universal is required to perform as of the purchase

date of each mortgage loan within one hundred twenty days of such purchase date with respect to that loan.

17. Another repurchase triggering event provided for in the Contract is if a certain loan purchased by AFR, that was then conveyed, transferred or assigned by AFR to any third party is repurchased by AFR due to a loan documentation defect or other defect such as a breach of warranty which existed prior to, or arose as a result of any action, inaction or occurrence on or before AFR purchased the loan from Universal (and it does not matter in this event if that mortgage loan is delinquent or not).

18. Among the triggering events provided for in the Contract Addendum is that in the event AFR receives a demand for repurchase or indemnification in lieu of repurchase for a mortgage loan by an entity to whom AFR has sold the mortgage loan (or its assigns or successor in interest), such demand itself is deemed a breach of the related representation, warranty, covenant or agreement of Universal, regardless of the originating party, and the related mortgage loan must be repurchased.

19. The Contract Addendum also provides that if a particular mortgage loan has been identified for repurchase, Universal must repurchase at the Repurchase Price within thirty (30) days based on the loan meeting certain criteria, one of which is "AFR receives a demand for repurchase or indemnification in lieu of repurchase for a Mortgage Loan by an agency or owner and holder of a Mortgage Loan, or its successor in interest who then has an ownership interest in the Mortgage Loan, such demand is deemed a breach of the related representation, warranty, covenant or agreement of the correspondent hereunder regardless of the originating party, the Mortgage Loan must be repurchased by [Universal] in accordance with the Agreement."

20. The Contract provides that the repurchase price for each and all individual mortgage loans required to repurchased thereunder is inclusive of: a) paying AFR $3000 reimbursement for administrative expenses; b) returning any SRP [service release premium] paid to Universal in connection with the original purchase by AFR of such mortgage loan; c) reimbursing all yield spread premium paid above par that AFR paid to Universal for such mortgage loan; d) paying the then outstanding unpaid principal balance of such mortgage loan; e) paying all accrued, but as of then yet unpaid interest and late charges; e) paying all escrow advances made by AFR; and g) paying any and all other miscellaneous expenses actually incurred by AFR with respect to the related mortgage loan.

21. The Contract further provides that in addition to any remedies available to AFR, Universal is to also indemnify AFR against all losses, damages, fines, costs, or expenses of any nature related to, *inter alia,* any act or omission of Universal and/or any non-fulfillment of any covenant [such as failure to provide trailing documentation or to repurchase], and expressly includes attorney's fees.

22. The Contract further provides that in connection with any litigation arising out of the enforcement of the Contract, AFR is entitled to recover all costs incurred including its attorney's fees, for services rendered before suit is brought, prior to trial, at trial, or appeal and in federal bankruptcy proceeding.

23. AFR made a repurchase demand to Universal, informally on or about April 5, 2023 via email (although on information and belief, such email notice was actually received) and formally on or about May 18, 2023 via formal notice under the Contract to repurchase that certain loan associated with the property located at 3755 NW 211 St., Miami

Gardens, FL 33055, that AFR identifies as Loan # 92283228 (the "Loan"). A true and correct copy of this notice and demand is attached hereto as **Exhibit B**.

24. With regard to the Loan, AFR purchased it from Universal as a delegated underwritten loan which, pursuant to the Contract, Universal was obligated to have underwritten the Loan pursuant to the published guidelines of Freddie Mac, which included, among other things, to have obtained the borrower's 2015 tax return since the borrower was self-employed.

25. Universal failed to obtain the 2015 tax return in connection with underwriting the Loan.

26. After AFR purchased the loan, it was sold to a third party investor.

27. Sometime thereafter, Freddie Mac performed a quality control audit on the Loan and discovered the underwriting defect.

28. Thereafter, AFR was required to repurchase the Loan as a result of the underwriting defect.

29. AFR then alerted Universal to the findings, gave Universal an opportunity to correct the defect, but Universal has failed to correct the defect.

30. AFR then issued its repurchase demand as a result of it having to repurchase the Loan as a result of Universal's underwriting defect which breached its warranty.

31. Universal has not fulfilled its contractual obligation to repurchase the Loan and remains indebted to AFR in an amount due as of May 18, 2023 of $257,659.78, plus a per diem amount of $36.02 for each day thereafter, plus costs and fees, including attorney's fees.

FIRST COUNT
Breach of Contract

32. Plaintiff repeats and realleges each and every preceding paragraph as if fully set forth at length herein.

33. The Contract constitutes a valid and enforceable agreement between AFR and Universal.

34. AFR has fulfilled all of its obligations under the Contract with respect to the Loan that is the subject of this action, having paid the purchase price, and having provided all manner of notice to correct the Loan defects that might have avoided a repurchase obligation and cooperated with Universal in all material ways to so avoid that result, but having been unsuccessful, repurchasing the Loan as a result of a third party owner demand, and having made proper demand to Universal for repurchase.

35. AFR has provided Universal all required notice.

36. By not repurchasing the Loan as noticed and demanded, Universal has breached its contract with AFR.

37. By not supplying all of the documents in connection with the Loan, and by AFR being required to repurchase the Loan from its third party investor, and Universal not being able to cure the defect in documentation and failing to repurchase the Loan as noticed and demanded by AFR, Universal has breached its contract with AFR.

38. AFR, through its own efforts and through counsel, has provided Universal every opportunity to make good on its contractual obligations.  While admitting their obligations and promising to repurchase the Loan, Universal remains in breach of their obligation.

39. As a direct and proximate cause of the breach of contract, AFR has been damaged.

40. AFR's remedies under the Contract include full repurchase of the Loan and all costs and fees including its attorney's fees.

SECOND COUNT
Unjust Enrichment – All parties

41. Plaintiff repeats and realleges each and every preceding paragraph as if fully set forth at length herein.

42. To the extent a breach of contract claim is inapplicable to Universal, Universal will have been unjustly enriched if not ordered to indemnify AFR for AFR's damages and/or repurchase the Loan.

43. By not repurchasing the Loan and indemnifying AFR for all its costs, Universal remains undamaged and AFR is damaged while Universal is the one contractually (and ethically) at fault as AFR is left to deal with a defect loan that should be the obligation of Universal.

44. Moreover, Universal would be allowed to retain money not used to repurchase the Loan.

45. The retention of this benefit that damages AFR is unjust.

46. Indeed, Universal would be incentivized to continue this inequitable behavior on other unsuspecting companies, make false promises, and continue unfazed and in fact, emboldened, by the Court's imprimatur on its activity.

47. As a result of the foregoing, AFR has to date borne the brunt of the damages it has suffered.

## JURY DEMAND

48. AFR respectfully requests that this case be tried before a jury.

## PRAYER FOR RELIEF

49. Based upon the foregoing allegations and claims, AFR respectfully prays that the Court grant the following relief:

a. Awarding Plaintiff all monetary damages equal to all damages proved at trial, an amount believed to be the sum of the repurchase price for the Loan, an amount believed to be in excess of $257,659.78;

b. Awarding Plaintiff compensatory, consequential and punitive damages;

c. Awarding Plaintiff both pre-judgment and post-judgment interest;

d. Awarding Plaintiff all attorney's fees and costs of suit;

e. Awarding Plaintiff such other and further relief as the Court finds equitable and just.

Respectfully submitted,

Dated: 06/30/2023
Tampa, Florida

_____
Jack B. Baldini, Esq.
Florida Bar No. 1011265
Baldini Law, LLC
12557 Leatherleaf Drive
Tampa, Florida 33626
973.945.1645
jack@baldinilaw.com
Attorney for Plaintiff